## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) PEOPLE FOR THE ETHICAL
    TREATMENT OF ANIMALS, INC.,

          *Petitioner,*

v.

(1) JEFFREY LOWE,
(2) LAUREN LOWE,
(3) ERIK COWIE,
(4) CHERYL SCOTT,
(5) ERIC YANO,
(6) TIGER KING, LLC,
(7) GREATER WYNNEWOOD
    EXOTIC ANIMAL PARK, LLC, and
(8) BIG CAT INSTITUTE,

          *Respondents.*

Case No.   CIV-20-1076-D

## PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.'S
## VERIFIED PETITION TO PERPETUATE EVIDENCE

Pursuant to Federal Rules of Civil Procedure 27(a) and 34, Petitioner People for the Ethical Treatment of Animals, Inc. ("PETA"), respectfully petitions this Court to enter an order to perpetuate testimony and evidence related to the identity of the lemurs, grizzly bear, jaguar, tigers, lions, and tiger-lion hybrids (together with jaguar, tigers, and lions, "Big Cats") in the possession and control of Respondents Tiger King, LLC, Greater Wynnewood Exotic Animal Park, LLC, Big Cat Institute, Jeffrey Lowe, Lauren Lowe, Erik Cowie, Cheryl Scott, and Eric Yano (collectively, the "Respondents"). In support of this Petition, PETA states:

PETA's narrow request, which seeks only to preserve existing evidence related to the identity of endangered and threatened species in the possession and control of the Respondents, is necessary to prevent the loss of animals, or information regarding their whereabouts, at the heart of PETA's forthcoming Endangered Species Act, 16 U.S.C. §§ 1531-1544 (the "ESA") lawsuit. As further detailed below, despite being on notice of PETA's intent to sue under the ESA and their corresponding evidence preservation obligations, the Respondents transferred at least twenty-one Big Cats outside the state. Further, Mr. and Mrs. Lowe—the Respondents responsible for the care of the animals at the center of PETA's expected suit—have a well-documented history of failing to maintain animal acquisition and disposition records, falsifying records related to the transfer and veterinary care of the animals at issue, and threatening, committing, aiding, and abetting spoliation of evidence related to Big Cats in separate litigation. These actions raise significant concerns that, absent an order from this Court, Respondents will continue to transfer animals or otherwise alter, destroy, or conceal evidence, including the animals themselves, before PETA is able to file its ESA action. If lost, evidence related to the animals' identities would inevitably result in a failure or delay of justice, particularly for the endangered and threatened subjects of the forthcoming suit.

## NATURE OF ACTION

1.      This Petition arises out of and relates to PETA's notice of intent to file a citizen suit pursuant to the ESA, against the Respondents, dated September 21, 2020 (the "Notice Letter"), for their chronic "takes" of a grizzly bear, lemurs, and Big Cats

(collectively, "Listed Species"), which, at least with respect to the lemurs and Big Cats, are ongoing. *See* Decl. of Heather L. Hintz ("Hintz Decl.") ¶ 4 & Exh. 1.

2.     By this Petition, PETA seeks to perpetuate specific testimony from the Respondents relating to the identity of the Listed Species before PETA is able to file its lawsuit against them. As described below, PETA seeks to (1) perpetuate the testimony of Mr. Lowe, Mrs. Lowe, and Erik Cowie either orally or by written interrogatories regarding the identity of the Listed Species in their care, custody, and control as of September 21, 2020, and (2) inspect the parcels of property located at 21469 and 21619 Jimbo Road, Thackerville, Oklahoma 73459 (collectively, the "Thackerville Facility") to confirm the identity of the Listed Species currently in the Respondents' possession and control.

## PARTIES

3.     Greater Wynnewood Exotic Animal Park, LLC, is an Oklahoma Domestic Limited Liability Company with its principal place of business located at 25803 North County Road 3250, Wynnewood, Oklahoma 73098 ("the Wynnewood Facility"). Until on or about October 3, 2020, the Listed Species in Respondents' custody and control were located at the Wynnewood Facility.

4.     Big Cat Institute is an Oklahoma Domestic Not For Profit Corporation with its principal place of business located at 25803 North County Road 3250, Wynnewood, Oklahoma 73098.

5.     Tiger King, LLC (DBA Tiger King Park) is an Oklahoma Domestic Limited Liability company with its principal place of business located at 21469 Jimbo Road,

Wynnewood, Oklahoma 73459. As of October 3 2020, the Listed Species in Respondents'
custody and control are located at the Thackerville Facility.

6.    Jeffrey Lowe is the registered agent of Big Cat Institute, the operator and sole
member of the Greater Wynnewood Exotic Animal Park, LLC, the operator of Tiger King
Park, and is a citizen and resident of Oklahoma. Mr. Lowe's last known address was 25803
North County Road 3250, Wynnewood, Oklahoma 73098.

7.    Lauren Lowe is the Vice President of the Greater Wynnewood Exotic Animal
Park, LLC, operator of Tiger King Park, and is a citizen and resident of Oklahoma. Mrs.
Lowe's last known address was 25803 North County Road 3250, Wynnewood, Oklahoma
73098. Among other things, Mrs. Lowe "handle[s] the records for inventory, acquisition,
[and] disposition" of the animals in Respondents' custody and control. Hintz Decl. ¶ 22 &
Exh. 16 (Lauren Lowe Aff. (Jul. 8, 2020), Exh. A to Complainant's Resp. to Respondents'
Mot. to Dismiss Lauren Lowe, *Jeffrey Lowe*, *et al.*, AWA Docket Nos. 20-J-0152 and 20-
J0153 (USDA Sept. 22, 2020)).

8.    Erik Cowie is a long-time animal care staffer at the Greater Wynnewood
Exotic Animal Park and is a citizen and resident of Oklahoma. Mr. Cowie's last known
address was 25803 North County Road 3250, Wynnewood, Oklahoma 73098.

9.    On information and belief, Defendant Eric Yano is an Executive Partner in
Tiger King LLC, is funding and involved with the staffing of the Thackerville Facility, and
is a citizen and resident of Nevada.

10.    Cheryl Scott owns, and, on information and belief, resides on, the parcel of
property located at 21619 Jimbo Road, Thackerville, Oklahoma 73459.

4

11.     PETA is a Virginia nonstock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code. PETA's principal place of business is located at 501 Front Street, Norfolk, Virginia 23510. PETA is dedicated to protecting animals, including endangered and threatened animals from abuse, neglect, and cruelty.

12.     The expected adverse parties in this case are the Respondents.

## JURISDICTION AND VENUE

13.     Federal jurisdiction exists in this case pursuant to 28 U.S.C. § 1331 because the expected underlying litigation by PETA against the Respondents arises under the ESA.

14.     Venue is proper in the Western District of Oklahoma because at least two of the expected adverse parties in this case, the Greater Wynnewood Exotic Animal Park, LLC, and Big Cat Institute, reside within this judicial district. FED. R. CIV. P. 27 (A Rule 27 Petition may be filed "in the district court for the district where *any* expected adverse party resides.") (emphasis added).

## APPLICABLE LEGAL STANDARDS

15.     Federal Rule of Civil Procedure 27 may be invoked before an action is filed to preserve testimony and other evidence. FED. R. CIV. P. 27(a). To qualify for Rule 27 relief, a petitioner must show the following:

> (A) that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought;
>
> (B) the subject matter of the expected action and the petitioner's interest;
>
> (C) the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;

(D) the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and

(E) the name, address, and expected substance of the testimony of each deponent.

FED. R. CIV. P. 27(a)(1).

16.    Rule 27 further provides:

If satisfied that perpetuating the testimony may prevent a failure or delay of justice, the court must issue an order that designates or describes the persons whose depositions may be taken, specifies the subject matter of the examinations, and states whether the depositions will be taken orally or by written interrogatories. The depositions may then be taken under these rules, and the court may issue orders like those authorized by Rules 34 and 35.

FED. R. CIV. P. 27(a)(3).

17.    Under this Rule, a petitioner can move to perpetuate testimony as well as other evidence through inspection under Rule 34 where there is a significant risk that evidence will be lost or destroyed if not perpetuated. *Id*.; *see also Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra,* 198 F.3d 473, 485 (4th Cir.1999); *Clark v. Dunlap*, No. 14-MC-00018-BNB, 2014 WL 1089559, at *2 (D. Colo. Mar. 19, 2014).

18.    Here, Respondents are on notice of PETA's intent to sue at the expiration of the sixty-day notice period, Hintz Decl. ¶ 4 & Exh. 1, and therefore have an existing duty to preserve evidence. *See Hinshaw v. Dolgen Corp., LLC*, No. CIV-12-277-D, 2013 WL 5596802, at *3 (W.D. Okla. Oct. 11, 2013) ("[A] party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent.") (quoting *Burlington N. & Santa Fe Ry. Co.,* 505 F.3d 1013, 1032 (10th Cir.2007)). Thus, by invoking Rule 27 and having satisfied all of the requirements to do so, PETA seeks relief that is consistent with Respondents' existing evidence preservation obligations.

6

## FACTUAL BACKGROUND

**I.     PETA expects to sue the Respondents under the ESA after the expiry of the sixty-day notice period.**

19.     PETA expects to be a party to an ESA action cognizable in this Court. In order to ensure the ESA's enforcement, Congress authorized private citizens to file suit "to enjoin any person" from violating the ESA or its implementing regulations. 16 U.S.C. § 1540(g)(1)(A).

20.     Prior to commencing a citizen suit, however, the alleged violator and the government must be provided with sixty days written notice. *Id*. 1540(g)(2)(A)(i). On September 21, 2020, PETA provided Respondents, the Secretary of the Interior, and the Director of the U.S. Fish & Wildlife Service Director with this written notice. *See* Hintz Decl. ¶ 4 & Exh. 1. Thus, PETA is unable to file its ESA action until Friday, November 20, 2020.

21.     One of the ESA's central provisions prohibits the "take" of endangered and certain threatened species within the United States, including, grizzly bears, lemurs, jaguars, tigers, lions, hybrids of listed species, and their subspecies. *See* 16 U.S.C § 1538(a)(1)(B), (G); 50 C.F.R. §§ 17.11(h), 17.21(c)(1), 17.31(a), 17.40(b), (r); *see also* Hintz Dec. ¶ 13 & Exh. 8 (Order, *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc.*, No. 4:17-CV-00186-RLY-DML, at 6 (S.D. Ind. Sept. 15, 2020) ("hybrids of *protected* species are covered under the ESA." (citing *United States v. Kapp*, 419 F.3d 666, 673 (7th Cir. 2005)). To "take" "means to harass, harm, pursue, hunt,

shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

22.    Subject to limited exceptions not applicable here, the ESA also makes it unlawful for a person to "possess, sell, deliver, carry, transport, or ship, by any means whatsoever," any ESA-protected species who has been unlawfully taken, and "deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity," or "sell or offer for sale in interstate or foreign commerce" any ESA-protected species. 16 U.S.C. § 1538(a)(1)(D)–(G); 50 C.F.R. §§ 17.21(d)–(f), 17.31, 17.40(r). *See also* 50 C.F.R. §§ 17.40(b), 17.84(l) (grizzly bear special rules).

23.    The subject matter of the action that PETA expects to bring is based on PETA's contentions concerning Respondents' repeated and ongoing violations of Section 9 of the ESA and its implementing regulations in connection with conditions that harm and harass the Listed Species and acts that relate to the trafficking in Listed Species.

24.    PETA contends the Respondents are engaged in the chronic and ongoing "take" of Listed Species in violation of the ESA. *See* Hintz Decl. ¶ 4 & Exh. 1. In particular, and as further explained in the Notice Letter, PETA contends the Respondents (1) deny Listed Species adequate veterinary care; (2) prematurely separate Big Cats from their mothers and force them into direct contact with the public; (3) deny Listed Species adequately implemented nutritional protocols; (4) maintain and house the Listed Species in unacceptable conditions of confinement; and (5) on information and belief, have

trafficked in Listed Species, all in violation of the ESA and its implementing regulations. *See id*.

## II. The evidence relating to the expected litigation, including the identity of Listed Species, will be lost unless it is preserved.

25.     The testimony and evidence PETA seeks to perpetuate are in danger of being lost or destroyed if depositions of Mr. Lowe, Mrs. Lowe, and Erik Cowie and an inventory of the animals, including through inspection under Rule 34, are not immediately taken. The preservation of testimony and evidence is necessary for the reasons outlined below.

26.     PETA sent its Notice Letter on September 21, 2020, in which it expressly notified Respondents of their evidence preservation obligation, including their obligation not to "transfer[] physical or legal custody of the Listed Species, unless otherwise ordered by a court or government agency." Hintz Decl. ¶¶ 4, 5 & Exh. 1 at 20. Despite this and without notice to PETA, Respondents transferred twenty-one Listed Species—specifically, sixteen tigers, four lions, and one tiger-lion hybrid—to Tiger Haven, an unaccredited facility located in Kingston, Tennessee, on September 28 or 29, 2020.[1] *Id*. ¶¶ 7, 8 & Exh. 3 (Tenn. Wildlife Resource Agency, Captive Wildlife Report of Animals Imported, Importation Permit No. 32613331).[2] Concerns regarding Respondents' most recent known

---

[1]     After PETA sent its Notice Letter, Respondents also transferred four Listed Species, i.e., three tigers and one grizzly bear, to The Wild Animal Sanctuary, which is accredited by the Global Federation of Animal Sanctuaries. Hintz Decl. ¶ 6 & Exh. 2 (The Wild Animal Sanctuary, *Tiger King's Animals at Greater Wynnewood Exotic Animal Park Rescued and Rehomed*, PRNewswire, Oct. 9, 2020). Because these animals were placed with an accredited sanctuary, PETA does not take issue with this transfer.

[2]     Mr. Lowe has a history of transferring large numbers of Listed Species to Tiger Haven. For example, according to an Oklahoma Department of Agriculture, Food &

transfer—which occurred approximately one week *after* PETA sent its Notice Letter—are underscored by Mr. Lowe and the Greater Wynnewood Exotic Animal Park's history of trafficking in Listed Species across the country, including neonatal immune-incompetent Big Cat cubs who cannot thermoregulate. *See id*. ¶ 4 & Exh. 1 at 17−19.

27.    Respondents' most recent transfer of Listed Species to Tiger Haven is not the first time at least one of the Respondents has been involved with the transfer—spoliation—of animals at the center of an ESA case. Mr. Lowe aided and abetted the attempted spoliation of Listed Species in violation of a court order in litigation in the Middle District of Florida. *See, e.g.*, Hintz Decl. ¶ 14 & Exh. 9 (Am. R. & R., *People For The Ethical Treatment of Animals, Inc. v. Dade City's Wild Things*, *Inc., et al.,* 8:16-cv-02899-CEH-AAS (M.D. Fla., Jul. 30, 2019) (recommending sanctions and default judgment on pre-amended complaint against defendants following bad faith, willful transfer of Listed Species in Endangered Species Act litigation to Mr. Lowe)). *See also id*. ¶ 15 & Exh. 10 (PETA's Emergency Appl. for TRO and Prelim. Inj. or, in the Alternative,

---

Forestry Certificate of Veterinary Inspection ("CVI") executed on February 17, 2020, Mr. Lowe transferred sixteen tigers to Tiger Haven. Hintz Decl. ¶ 10 & Exh. 5 at 1-2. Another six tigers were transferred from Mr. Lowe to Tiger Haven on August 18, 2020. *Id*. ¶ 9 & Exh. 4. Additionally, since February 2020, Mr. Lowe has falsely indicated on at least two separate occasions that the purpose of the interstate movement from his facility to Tiger Haven was for "Exhibition," *id*. ¶¶ 10, 11 & Exhs. 5, 6, despite the fact that Tiger Haven is not licensed by the USDA and therefore cannot lawfully exhibit USDA-regulated animals, such as Big Cats to the public. *Compare* 7 U.S.C. § 2132(h) (defining "exhibitor"), 9 C.F.R. § 1.1 (same), and *id.* § 2.1(a)(1) (requiring individuals "operating or intending to operate as" an exhibitor to obtain a USDA license, subject to limited exceptions not applicable here) *with* Hintz Decl. ¶ 12 & Exh. 7 (list of USDA licensees).

Emergency Mot. for Order Prohibiting Spoliation and Preserving Evid., *People For The Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc. et al.*, 8:16-cv-02899-CEH-AAS (M.D. Fla., July 14, 2017) (detailing the role Mr. Lowe's facility played in receiving spoliated animals)).

28.     Shortly thereafter, Mr. Lowe stormed out of a deposition in a separate, unrelated ESA lawsuit pending before the District Court for the Southern District of Indiana after PETA asked him to affirm that he would not circumvent legal restrictions on transfer of Listed Species. *See* Hintz Decl. ¶ 16 & Exh. 11 at 122:8-125:16 (Jeffrey Lowe Deposition Tr. (July 9, 2018), *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind., Apr. 30, 2019), ECF No. 204-5).

29.     Most alarmingly, Mr. Lowe then acted in concert with a defendant in that litigation, Timothy Stark, to transport Listed Species—four lion cubs at the heart of that litigation—in knowing violation of a preliminary injunction and evidence preservation orders, the latest of which was issued mere days before Mr. Lowe's actions. *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc.*, No. 4:17-CV-00186-RLY-DML, 2020 WL 4448481, at *5 (S.D. Ind. Aug. 3, 2020). Following this transfer, Mr. Lowe was added to the case as an additional defendant. *Id.* at *5 n.4 (S.D. Ind. Aug. 3, 2020).

30.     Critically, Respondents Mr. and Mrs. Lowe also failed to maintain animal acquisition and disposition records as required by the Animal Welfare Act, 7 U.S.C. §§ 2131–60. ("AWA"). For example, in July 2020 the U.S. Department of Agriculture

11

("USDA") cited Respondent Mr. Lowe for missing or unavailable acquisition and disposition records for thirty-four animals who "could not be accounted for by the facility representatives," including five Big Cats who were "dropped from current inventory with no disposition papers to document where they have gone," and two Big Cats who "were transferred on 2/17/20" without record of acquisition or appearance on the facilities previous inventory. Hintz Decl. ¶ 19 & Exh. 13 at 2 (USDA, Inspection Report, Jeffrey Lowe (Jul. 8, 2020)). Indeed, the Lowes' repeated failure to make, keep, and maintain acquisition and disposition records for animals in their care, including Listed Species, is one of the many alleged violations detailed in an administrative complaint filed against them on August 17, 2020. *Id*. ¶ 21 & Exh. 15 at ¶¶ 12–15, 19–20 (Compl., *Jeffrey Lowe, et al*., AWA Docket Nos. 20-J-0152 and 20-J-0153 (USDA Aug. 17, 2020)).

31.     In addition to failing to maintain accurate records of Listed Species that they acquire and dispose of, the USDA also alleged that the Lowes have falsified veterinary records, including its Program of Veterinary Care. *Id*. ¶ 21 & Exh. 15 at ¶¶ 5, 17, 18. The alleged failure of the Lowes to maintain acquisition and disposition records and history of falsifying records makes it impossible to know where they have transferred animals, and raises significant concerns that they will transfer animals or otherwise alter, destroy, or conceal evidence before PETA is able to file its ESA action. These concerns are compounded by the fact that Mr. Lowe is no longer required to keep inventory records mandated by the AWA following the surrender of his then-suspended USDA license in August 2020. *Id*. ¶¶ 20, 23 & Exh. 14 at 1 (USDA, Inspection Report, Jeffrey Lowe (Aug.

21, 2020)), Exh. 17 (USDA, Official Notice of 21 Day Suspension of License 73-C-0230 (Aug. 13, 2020)); *see also* 9 C.F.R. § 2.75(b).

32.     Further, large discrepancies exist in the reported numbers of Listed Species in Respondents' custody and control. For example, in 2020, Mr. and Mrs. Lowe represented to the USDA that they held 212 animals; a number that matched the species inspected during the June 22, 2020, USDA inspection. *Compare* Hintz Decl. ¶ 21 & Exh. 15 at ¶ 3 (Compl., *Jeffrey Lowe, et al*., AWA Docket Nos. 20-J-0152 and 20-J-0153 (USDA Aug. 17, 2020)) *with id*. ¶ 18 & Exh. 12 at 7−8 (USDA, Inspection Report, Jeffrey Lowe (Jun. 22, 2020)). The June 2020 inventory further shows that 112 of the recorded 212 animals were Big Cats. *Id*. ¶ 18 & Exh. 12 at 7. Critically, on October 4, 2020, Respondent Lowe reported that there were "almost 160 big cats" relocated from the Wynnewood Facility. *Id*. ¶ 24 & Exh. 18 (Nolan Clay, *What's Next for Closed "Tiger King" Zoo?,* The Oklahoman, October 8, 2020); *id*. ¶ 25 & Exh. 19 (Greater Wynnewood Exotic Animal Park, FACEBOOK (Oct. 4, 2020)). If Mr. Lowe's most recent estimate is accurate, approximately *forty-six* Big Cats were not accounted for during the June 22 inspection.[3]

33.     In-person confirmation of the identity of Listed Species, including photo and video evidence to confirm the identity of the Listed Species, is even more necessary given Mr. Lowe's repeated reference to "conn[ing]," "burn[ing]," and "screw[ing]" PETA by replacing the Big Cats at issue in the *Dade City's Wild Things* litigation referenced above

---

[3]     This calculation assumes that Lowe's estimate includes the two non-ESA listed mountain lions on Lowe's June 22, 2020 USDA Inspection Report. *See* Hintz Decl. ¶ 18 & Exh. 12 at 7.

with "garbage tigers." Hintz Decl. ¶ 26 & Exh. 20 (Jeff N Lauren Lowe, FACEBOOK (Mar. 29, 2019); Jeff Negan Lowe, FACEBOOK (Nov. 16, 2018)). In an August 2020 deposition, Mr. Lowe taunted counsel for PETA by bragging that "I can. You can't" distinguish one Big Cat from another. *Id*. ¶ 27 & Exh. 21 at 81:24−82:4 (Jeffrey Lowe Deposition Tr. (Aug. 12, 2020), *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc.*, No. 4:17-CV-00186-RLY-DML).

34.     The necessity of the in-person inspection of the Listed Species at the Thackerville facility is further underscored by the Lowes' history of failing to cooperate in reasonable discovery requests in other ESA matters. For example, Mrs. Lowe was compelled by the Western District of Oklahoma to comply with two subpoenas related to the *Wildlife in Need & Wildlife in Deed, Inc.* litigation referenced above after she, among other things, "made no effort to produce" responsive documents, "refuse[d] to answer basic questions," and "unilaterally ended the deposition." Hintz Decl. ¶ 28 & Exh. 22 at 4−8 (Order, *People for the Ethical Treatment of Animals, Inc. v. Lowe*, No. CIV-20-00612-PRW (W.D. Okla Sept. 21, 2020)). Similarly, the Southern District of Indiana compelled Mr. Lowe's participation in discovery in that same matter and referred to Mr. Lowe's conduct as "bad faith" after he "refused to answer many questions, and unilaterally terminated the deposition after a short period." *Id*. ¶ 29 & Exh. 23 at 1, 3 (Order on Pl.'s Mot. to Compel as to Def. Lowe, *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind. June 30, 2020)). Despite the District Court's order, Mr. Lowe still refused to identify four lions at issue in the *Wildlife in Need & Wildlife in Deed, Inc.* litigation by name. *See, e.g.*, *id*. ¶ 30

& Exh. 24 at n.3 (Br. in Supp. of PETA's Mot. for Sum. J. Against Def. Jeff Lowe, *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc.*, No. 4:17-CV-00186-RLY-DML (S.D. Ind. Sept. 11, 2020) (detailing Mr. Lowe's repeated refusal to produce documents and respond to written discovery requests requiring him to identify the lions at issue in that case)).

35.    Given the above, including Respondents' relocation of at least twenty-one animals subject to PETA's Notice Letter, and the Lowes' history of threatening, committing, aiding, and abetting spoliation of evidence, falsifying records, and failing to comply with federally mandated record keeping requirements, the testimony of Mr. Lowe, Mrs. Lowe, and Respondent Erik Cowie, and an inspection of the Thackerville Facility is necessary to identify, for the purposes of preservation, the Listed Species presently in Respondents' possession and control, which if lost, would be extremely difficult—and likely impossible—to duplicate through other evidence and witnesses.

## III.    The scope of the relief requested

36.    The following evidence and testimony relating to the Listed Species should be perpetuated:

(1)    <u>Listed Species located at 21469 and 21619 Jimbo Road, Thackerville, Oklahoma 73459</u>: as of the date of filing this Petition, there are between 112 and 160 Big Cats and 7 lemurs at the Thackerville Facility. This Petition is necessary to obtain an accurate inventory of Listed Species in Respondents' possession and control, given Respondents' failure to preserve relevant evidence, included Listed Species, after PETA sent its Notice Letter, and their history of acquiring and disposing of Listed Species without

maintaining requisite records. Therefore, PETA requests an inspection of the Thackerville Facility to confirm the identity of the Listed Species and take photo and video evidence for the purposes of identifying the animals at issue. Such identifying information is necessary in order to ensure that evidence central to the forthcoming litigation, i.e., the Listed Species themselves, has been preserved.

(2)  <u>Jeffrey Lowe</u>: Mr. Lowe is registered agent of Big Cat Institute, the operator and sole member of Greater Wynnewood Exotic Animal Park, LLC, and the operator of Tiger King Park. He is primarily responsible for the day-to-day operations of Tiger King Park, oversees the care and handling of the Listed Species, and is the primary person responsible for transferring Listed Species. Mr. Lowe's testimony would confirm the identity of each Listed Species owned by the Respondents.

(3)  <u>Lauren Lowe</u>:  Mrs. Lowe is the Vice President of the Greater Wynnewood Exotic Animal Park, LLC, and is involved in the care and handling of the Listed Species. Mrs. Lowe's testimony is necessary to confirm the identity of the Listed Species owned by the Respondents, because, among other things, Mrs. Lowe "handle[s] the records for inventory, acquisition, [and] disposition" records. Hintz Decl. ¶ 22 & Exh. 16.

(4)  <u>Erik Cowie</u>:  Mr. Cowie is a long-time animal care staffer at the Greater Wynnewood Exotic Animal Park. Given Mr. Cowie's history of caring for the Listed Species at issue, including his familiarity with the individual animals, his testimony is necessary to confirm their identity.

37.  A failure or delay of justice will occur in this case if the Respondents further traffic or transfer the Listed Species and evidence relating to the identity of the Listed

Species is not now preserved. Considering the Respondents' recent transfer of at least twenty-one Listed Species to Tiger Haven in Tennessee following the Respondents receipt of PETA's Notice Letter, and history of acquiring and disposing of animals without proper documentation, the delay that will occur between now and the contemplated initiation of future litigation may prevent PETA from obtaining admissible relevant evidence and testimony relating to the care and treatment of Listed Species by the Respondents.

38.     Therefore, PETA requests that this Court enter an order authorizing PETA to (i) perpetuate Mr. Lowe, Mrs. Lowe, and Erik Cowie's testimony orally or by written interrogatories and (ii) inspect the Thackerville Facility, with counsel and two videographers, for the purpose of identifying the Listed Species at the facility in order to preserve evidence central to the forthcoming litigation.

WHEREFORE, PETA respectfully requests that this Court enter an order in the form of the proposed order attached hereto as Exhibit 1 granting the Verified Petition to Perpetuate Evidence, and for all other just and proper relief under the circumstances.

Date     October 22, 2020                    Respectfully submitted,

                                             /s/ *Heather L. Hintz*
                                             Heather L. Hintz, OBA No. 14253
                                             Mark E. Hornbeek, OBA No. 33198
                                             PHILLIPS MURRAH P.C.
                                             Corporate Tower, 13th Floor
                                             101 North Robinson
                                             Oklahoma City, Oklahoma 73102
                                             Telephone: (405) 235-4100
                                             Facsimile:  (405) 235-4133
                                             *hlhintz@phillipsmurrah.com*
                                             *mehornbeek@phillipsmurrah.com*

                                             And

17

Asher Smith *(pro hac vice pending)*
PETA FOUNDATION
1536 16th Street NW
Washington, DC  20036
Phone:  (202) 483-7382
*ashers@petaf.org*

And

Caitlin Hawks *(pro hac vice pending)*
Zeynep Graves *(pro hac vice pending)*
PETA FOUNDATION
2154 W Sunset Blvd.
Los Angeles, CA  90026
T:  (323) 210-2263
F:  (213) 484-1648
*caitlinh@petaf.org*
*ZeynapG@petaf.org*

***Attorneys for Plaintiffs People for the***
***Ethical Treatment of Animals, Inc.***

## VERIFICATION

I, Brittany Peet, declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: ___10/21/20_____     People for the Ethical Treatment of Animals, Inc.

By: _____

Brittany Peet